## VAN TINE *a*. NIMS.

*Supreme Court, First District; Before Hon. Jas. F. Whiting, June*, 1856.

EXAMINATION OF WITNESS BEFORE COMMITTEE OF N. Y. COM-
MON COUNCIL.—POWERS OF COMMITTEE.—CRIMINATING QUES-
TIONS.

Under the Act of 1855, (*Laws of* 1855, 24 *ch.* 20)—which authorizes an attach-
ment against a witness subpœnaed before a committee of the New York Com-
mon Council, and refusing to answer "any proper question;"—those only are
proper questions which are pertinent to the investigation and connected with the
subject referred, and which relate to matters within the power of the common
council to inquire about.

A witness subpœnaed under that act is privileged from answering any questions
his answers to which can have a tendency to expose him to any kind of punish-
ment upon a criminal charge.

Application for an attachment.

A special committee of the New York Common Council
having been appointed to investigate the action of the Com-
mittee on Streets, Theodore F. Nims was subpœnaed (under
*Laws of* 1855, 24 *ch.* 20), to attend before them and be ex-
amined as a witness. On his examination he refused to an-
swer certain questions; the nature of which appears in the
opinion. John Van Tine, on behalf of the Committee of
investigation, now applied for an attachment pursuant to the
act.

WHITING, J.—Mr. Nims, a witness in a proceeding before a
special committee of the Common Council, appointed " to in-
vestigate the action of the Committee on Streets, who had
under consideration the widening and improving of Reade-
street," declined to answer several questions propounded to him.
He is before me on an order to show cause why he could not be
compelled to answer those questions.

It is alleged on his part that he is not bound to answer:—
First, because the subject of inquiry is not within the scope

of the authority conferred upon the special committee. Second, because the answers might criminate the witness.

The only authority conferred upon the special committee is to inquire into the action of the Street Committee. The authority conferred upon the special committee is special and limited, and they cannot go beyond the duty imposed. It is very questionable whether the Common Council have any power to authorize any committee to inquire into the conduct or action of any person not a member of either branch of the city government, especially when such conduct may amount to a crime. In this case, however, Nims answered every question put to him as to the action of the Street Committee, or any of its members, in relation to the widening and improving of Reade-street. All the questions to which answers are now sought from the witness relate to his own acts with individuals other than the committee. These inquiries the Special Committee have no power to make—they are not "proper questions," within the meaning of the statute. To be proper they must be pertinent to the investigation, and connected with the subject referred, and relate to matters within the power of the Common Council to inquire about. The act "to amend the existing law relating to bribery" makes the offer to furnish, in whole or in part, any money, goods, right in action, or other property, or anything of value, or any pecuniary or other individual advantage, present or prospective, to any member of the Common Council, with an intent to influence his vote or action upon any question, matter, cause, or proceeding, pending, or which may be brought before him in his official capacity, a felony. It also declares that "every person who shall knowingly bear or convey any such gift, gratuity or proposal, or shall in any manner negotiate between any other persons for any act in violation of the preceding section, shall, upon conviction, be punished in like manner and to the same extent," as the principals. If Nims was in any way connected as an actor in offering to any of the persons named in the act a bribe, or in any way negotiating between any other persons to such deed, he would be guilty of an offence under this act. Bribery at the common law was a misdemeanor, but this act has en-

larged the grade of the offence and made it a felony. The law is too well settled to need the quotation of authorities to show that a witness is privileged from answering any question which will have a tendency to expose him to any kind of punishment upon a criminal charge. When the disclosure he may make may be used against him, however remote the fact, if it may prove even one link in the chain of evidence, which, when others are made known, may convict or have a tendency to convict of a crime, he is protected by the law from answering the question. "It is certainly not only a possible but a probable case," says one of the most enlightened jurists of the age, " that a witness, by disclosing a single fact may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself would be unavailing, but all other facts without it would be insufficient; while that remains concealed in his own bosom he is safe ; but draw it from thence and he is exposed to prosecution." It is urged that the witness did not put his refusal to answer upon the ground that the answers might tend to criminate him, and that if he had, that he is not the judge of that, but that the tribunal before which he is examined must decide that question. It is enough to say that the witness was not asked to state the grounds on which he refused to answer. If the question had been put he would probably have answered it; if he refused he might have been compelled to have stated the shield the law gives him as the reason of his refusal. The witness, however, must himself be the judge how far the answer may tend to criminate him. The court or tribunal could not know or be competent to decide whether it would or would not, unless the answer, no matter which way, must from the very nature of things be wholly indifferent. All that the court could do would be to see that the answer might have that effect; if it might, the privilege cannot be taken from the witness. If the answer under no possible circumstance could have any such tendency, the witness must answer. In the case before me, it is very clear that affirmative answers to the questions propounded might lead to the development of a chain of evidence that

might lead to his conviction of an offence within the law of the act against bribery. The reasons of his refusal to answer are so palpable upon the face of the questions that the special committee did not (probably for that reason) deem it necessary to ask them to be stated. It was urged that before me, also, that unless such witnesses can be compelled to give evidence, the offence of bribery under the act cannot be reached. That is an argument to be addressed to the law making power. When the legislature in its wisdom shall relieve such witnesses from all criminal and penal responsibility upon giving the evidence, then, and not till then, can the courts take from the witness the safeguards with which the constitution of the State and repeated judicial decisions have erected around them. On both grounds the objections are well taken, and the order to show cause must be discharged.

---

## THE PEOPLE *a.* BAKER.

*Supreme Court, First District; Special Term, June, 1856.*

CERTIORARI IN CRIMINAL CAUSES.—CHANGE OF PLACE OF TRIAL. IMPARTIAL TRIAL.

A *certiorari* to remove a criminal action from the Oyer and Terminer to the Supreme Court, may issue at the instance of the District Attorney as well as on application on behalf of the defendant.

Upon what principles, and under what state of circumstances a change of the place of trial should be ordered in a criminal action, upon the ground that in the original county a fair and impartial trial cannot be had.

Such a change may be ordered on the application of the District Attorney, as well as on that of the defendant.

Where such an application was made by the District Attorney, and was opposed on the ground that the defendant was unable to defray the expense of the attendance of his witnesses in another county, it was made a condition of the change that the District Attorney should make a satisfactory arrangement for the payment by the county in which the venue was originally laid, of those expenses.

Ordinarily where the place of trial is changed, an adjoining county is selected.

But if circumstances require a change to a more remote county, it may be ordered.

Motion to change the place of trial.